**Edward Charles CLEVELAND, By and Through the Conservator of his Estate, Kathleen CLEVELAND; and Kathleen Cleveland, Individually, Plaintiffs–Appellants and Cross–Appellees,**

v.

**PIPER AIRCRAFT CORPORATION, a corporation, Defendant–Appellee and Cross–Appellant.**

Nos. 86–2112, 86–2265.

United States Court of Appeals, Tenth Circuit.

Nov. 15, 1989.

Daniel C. Cathcart of Magana, Cathcart, McCarthy & Pierry, Los Angeles, Cal. (Richard E. Ransom of Richard E. Ransom, P.A., Albuquerque, N.M., with him on the brief), for plaintiffs-appellants and cross-appellees.

David K. Watkiss of Watkiss & Campbell, Salt Lake City, Utah (Tracy H. Fowler of Watkiss & Campbell and W.R. Logan of Civerolo, Hansen & Wolf, P.A., Albuquerque, N.M., with him on the brief), for defendant-appellee and cross-appellant.

Before SEYMOUR and EBEL, Circuit Judges, and RUSSELL, District Judge.*

DAVID L. RUSSELL, District Judge.

This case arises from a bizarre set of facts. On July 8, 1983, Edward Charles Cleveland attempted to take off from Mid-Valley Airport, Los Lunas, New Mexico, in a Piper Super Cub Model PA–18–150 aircraft, towing a glider attached to the aircraft's tail with a rope. Mr. Cleveland was

---

* Honorable David L. Russell, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

piloting the aircraft from the rear seat and was secured by a seat belt but not a shoulder harness. The front pilot's seat had been removed the evening before at the direction of Mr. Cleveland and Robert Mudd, the glider pilot and an F.A.A. certified mechanic, and a camera and camera mount had been attached to the base of the removed front seat. This was done because it was Cleveland's intent to film the glider in flight for a television commercial. Stephen Marks, a cinematographer, was in the front of the aircraft facing rearward, seated on two by fours fitted with a furniture pad and secured with a seat belt. During take-off the plane collided head-on with a van which had been parked at the end of the runway. Shortly before impact, the tail of the plane rose off the ground, and the glider became airborne. Mr. Mudd, the glider pilot, saw the van on the runway and released the tow rope, allowing the glider to sail over the collision.

At the time of the accident, the Super Cub aircraft was owned by Etchison "Greg" Lill. Mr. Lill employed Mr. Cleveland as a glider tow pilot at Valley High Soaring, which operated glider planes at the Mid–Valley Airport. Mr. Lill and Mr. Cleveland were involved in a dispute with John Wood, the owner of the airport, concerning the glider operation's compliance with FAA rules and regulations. Two days prior to the accident, Mr. Wood had stopped Mr. Cleveland on the taxiway by turning his van crosswise in front of Mr. Cleveland's aircraft. He warned Mr. Cleveland that he was not going to fly from the airport if he did not comply with the rules and regulations. The day before the accident, Mr. Wood had called the FAA, notified them that he was closing the airport and blocked the north end of the runway and taxiway of the airport during daylight hours with blocks, a box and several parked vehicles. A court hearing concerning Valley High Soaring's operations at Mid–Valley Airport had been scheduled for 9:00 a.m. on the day of the accident. Mr. Cleveland was aware that the airport had been closed the day before the accident and was aware of the scheduled hearing. When Mr. Wood awoke on the day of the accident, he saw activity and lights at the north end of the airport. He then drove his van onto the south end of the runway and parked it in the center of the runway, facing north, leaving its headlights on. Shortly thereafter, the aircraft struck the van head on. The fuselage of the plane broke in two upon impact. Mr. Cleveland's head struck the camera resulting in serious head and brain injuries.

Mr. Cleveland's wife, the conservator of his estate, brought this diversity action against Piper Aircraft Corporation, which manufactured and sold the Super Cub aircraft in 1970, claiming in negligence and strict liability that the airplane had inadequate rear seat pre-flight visibility, which caused the collision, and lacked a rear seat harness, which caused the injuries. Mrs. Cleveland's individual claim for loss of consortium was dismissed.[1]

Plaintiff filed a motion *in limine* to exclude "cause of crash evidence" as irrelevant to his "second collision" crashworthiness case, which motion was denied. Plaintiff also filed a motion for certification to the New Mexico Supreme Court of the question of whether evidence of the cause of the initial crash is admissible in a "second collision" crashworthiness case which is limited to damages from enhanced injuries caused by the second impact only. Plaintiff stated in his motion that he would pursue only the claim for damages from enhanced injuries in the second collision if evidence of causation was limited to that relevant to cause of the enhanced injuries and the apportionment of fault concurring in their cause. This motion was also denied. Plaintiff's action then proceeded to trial based on two theories of design negligence under New Mexico law—inadequate forward visibility from the rear pilot's seat during take-off and lack of a shoulder harness for the rear pilot's seat.

Following a five-day jury trial, the case was submitted to the jury on a special

---

1. Although Mrs. Cleveland, as the conservator of her husband's estate, remained the real party Plaintiff in this action, for the sake of simplicity we will hereinafter refer to Edward Charles Cleveland as the Plaintiff.

verdict form. Defendant objected to the special verdict form inasmuch as Question No. 7B, directed to the second collision or crashworthiness claim, only permitted the jury to compare Piper's negligence in failing to provide a rear seat harness to the negligence of Cleveland, and did not permit the jury to compare therewith the negligence of non-parties whose negligence was the proximate cause of Plaintiff's crashworthiness injuries. The objection was overruled. The jury found that Piper was negligent in the design, manufacture and/or sale of the aircraft without adequate forward vision from the rear seat; that this negligence (referred to at trial and herein as "design negligence," as distinguished from what was referred to at trial and will be referred to herein as "crashworthiness design negligence," i.e., the lack of a rear seat shoulder harness) was

"a proximate cause of injuries and damages to plaintiff Ed Cleveland"; that Piper was also negligent in not installing a rear seat shoulder harness at the time of sale of the aircraft or was negligent in not later fitting the plane with a rear seat shoulder harness; that this "crashworthiness design negligence" was a proximate cause of injuries and damages to Cleveland; and that 100% of Cleveland's injuries were attributable to crashworthiness or lack of a shoulder harness. R.Vol. I at Tab 108.[2] The jury found that Cleveland's total damages caused by design negligence due to inadequate forward vision and by crashworthiness negligence due to lack of a rear shoulder harness were $2,500,000.[3] The jury compared the following persons' and entity's negligence as to the design negligence or inadequate forward visibility claim and assigned these percentages of negligence

2. The special verdict of the jury reads as follows:

We, the Jury, unanimously agree to the following answers to the following Interrogatories.

1. Under what has been called the design negligence claim, was the defendant Piper Aircraft Corporation negligent in the design, manufacture and/or sale of the aircraft without adequate forward vision from the rear seat?    Yes _x_ No ___    (If the answer to No. 1 is "No", you are to skip No. 2 and answer No. 3.)

2. Was the design negligence a proximate cause of injuries and damages to plaintiff Ed Cleveland? Yes _X_ No ___

3. Under what has been called the crashworthiness claim, was defendant Piper Aircraft Corporation negligent in not installing a rear seat shoulder harness at the time of sale of the aircraft or was it negligent in not later fitting the plane with a rear seat shoulder harness? Yes _X_ No ___
(If the answer to No. 1 or 2 is "no", and the answer to No. 3 is also "no", then your foreman shall sign this verdict for the defendant and against the plaintiff, and you will all return to open court.)

4. Was the crashworthiness negligence of defendant Piper Aircraft corporation a proximate cause of injuries and damages to plaintiff Ed Cleveland?    Yes _X_ No ___
(If the answer to No. 4 is "yes", you are to answer the remaining questions on this verdict form. When you have agreed upon each of your answers, your foreman shall sign this verdict, and you will all return to open court. If the answer to No. 1 or 2 is "No", and the answer to No. 4 is also "No", then your foreman shall sign this verdict for the defendant and against the plaintiff, and you will all return to open court.)

5. What percentage, if any, of Ed Cleveland's injuries do you attribute to crashworthiness (lack of shoulder harness)? _100%_

6. In accordance with the damage instruction, we find the total amount of damages caused by design negligence due to inadequate forward vision and by lack of crashworthiness due to lack of rear shoulder harness to be $2,500,000. (Enter the total amount of damages without any reduction for any negligence of anyone.)

7. Compare the negligence of the following persons and find a percentage for each. The total of the percentages must equal 100%, but the percentage for any one or more of the persons named may be zero if you find that such person was not negligent or that any negligence on the part of such person was not a proximate cause of damage.

A. Under what has been called the design negligence claim (inadequate forward vision):

| | |
|---|---|
| Edward Charles Cleveland | 42.5% |
| Piper Aircraft Corporation | 41.7% |
| John "Jack" Wood | 0 |
| Robert Mudd | 15.8 |
| | |
| Total | 100% |

B. Under what has been called the crashworthiness design negligence claim (lack of shoulder harness in rear seat):

| | |
|---|---|
| Edward Charles Cleveland | 8.4% |
| Piper Aircraft Corporation | 91.6% |
| | |
| Total | 100% |

3. See note 2, supra.

to them: Cleveland, 42.5%; Piper, 41.7%; Wood, 0%; Mudd, 15.8%.[4] With respect to the crashworthiness claim, the jury compared the negligence of Cleveland and Piper only, finding that Cleveland's negligence accounted for 8.4% of the damages and Piper's accounted for 91.6% of the damages for this claim.[5] The trial court thereafter entered judgment in favor of Plaintiff Edward Charles Cleveland and against Defendant Piper Aircraft Corporation in the amount of $1,042,500 plus post-judgment interest and costs. R.Vol. I at Tab 111. The court apparently arrived at the amount of the judgment by multiplying the percentage of negligent fault attributed to Piper on the design defect or forward vision claim, only, times the total amount of damages the jury found Plaintiff sustained as a result of the accident and the lack of crashworthiness of the aircraft. On the same day, Plaintiff filed a motion to enter judgment on proportionate liability for crashworthiness design negligence in the amount of $2,290,000, a figure arrived at by multiplying Piper's 91.6% comparative negligence times the total amount of damages, $2,500,000, since the jury determined that 100% of the damages were attributable to the lack of a shoulder harness.

Thereafter Defendant moved alternatively for judgment notwithstanding the verdict or for a new trial. As grounds for its motion, Defendant asserted the absence of any proof of negligence in design and of proximate cause and that the accident and Plaintiff's conduct were unforeseeable as a matter of law. The district court denied these motions.

Plaintiff appeals to this Court, asserting as the sole basis for error the district court's failure to enter judgment on the crashworthiness claim rather than on the forward visibility claim. Defendant Piper cross appeals, asserting that the district court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict because 1) Plaintiff's evidence of crashworthiness design negligence did not meet New Mexico's standard of proof for design negligence—a showing of deviation from laws, regulations or in-

dustry standards; 2) Plaintiff's evidence failed to establish that any design negligence proximately caused Plaintiff's injuries; 3) Plaintiff's conduct was unforeseeable as a matter of law; and 4) the conduct of Plaintiff and of Mr. Wood were independent intervening causes as a matter of law. Defendant also asserts that the district court should have ordered a new trial and committed reversible error because it rejected a standard New Mexico special verdict form, employing instead one which did not permit the jury to compare the negligence of all persons or entities, including non-parties, which proximately caused Plaintiff's injuries, and which was inconsistent with the court's pretrial rulings and misleading.

## I.

In his sole argument supporting his appeal, Plaintiff asserts that because the jury found by special verdict that 100% of Plaintiff's injuries were caused by the lack of a shoulder harness, see R.Vol. I at Tab 108, Question No. 5, the district court erred by entering judgment on the design negligence claim for inadequate forward visibility rather than on the crashworthiness design negligence claim predicated on the lack of a rear seat shoulder harness.

We agree with Plaintiff that the district court's judgment was inconsistent with the jury's finding that 100% of Plaintiff's injuries were attributable to lack of crashworthiness. However, in determining whether the judgment entered was the proper one to enter on the jury's special verdict, our inquiry may not focus on one of the jury's findings to the exclusion of all of its other findings. By special verdict the jury also found that both the design negligence (lack of forward visibility) and the crashworthiness design negligence (lack of a rear seat shoulder harness) were proximate causes "of injuries and damages to plaintiff Ed Cleveland." R.Vol. I at Tab 108, Question Nos. 2 and 4. The jury's finding that the design negligence of Defendant was a proximate cause of Plaintiff's injuries and

4. *Id.*

5. *Id.*

damages is facially inconsistent with its finding that 100% of Plaintiff's injuries are attributable to crashworthiness design negligence. Thus, Plaintiff's appeal necessarily encompasses a determination of whether the special verdict answers are reconcilable with each other and with the entire case, including the pleadings, the evidence and the instructions, *see Harvey by Harvey v. General Motors Corp.*, 873 F.2d 1343, 1348 (10th Cir.1989), and if so, whether the special verdict answers are reconcilable in a manner which would warrant entry of judgment for Plaintiff on the crashworthiness design negligence claim rather than on the negligence design claim. If the verdicts are inconsistent as a matter of law, we must remand the case for a new trial. *See, e.g., Moss v. The City of Colorado Springs*, 871 F.2d 112, 114 (10th Cir. 1989). If the verdict answers are reconcilable but not in a manner warranting entry of judgment on the crashworthiness design negligence claim, the judgment must be affirmed unless other errors preclude affirmance. If the verdict answers are reconcilable in a manner warranting entry of judgment on the crashworthiness design negligence claim, we must remand to the district court with directions to enter judgment thereon. If the verdict answers are reconcilable in a manner warranting entry of judgment on the crashworthiness design negligence claim, but the special verdict form did not, for example, permit the jury to compare the negligence of all of those whose negligence may have caused or contributed in causing injuries Plaintiff received in the "second collision" or as a result of the lack of a rear seat shoulder harness, then we must vacate the judgment and remand this case to the district court for a new trial.

Plaintiff does not suggest how the apparent inconsistent findings in the special verdict can be harmonized. His argument *assumes* that the answers warrant, or may be reconciled in a manner warranting, entry of judgment for Plaintiff on the crashworthiness design negligence claim and, accurately anticipating Defendant's responsive argument, is directed to the issue of whether, under New Mexico law, those whose negligence was a proximate cause of the "initial collision" are legally responsible for "second collision" injuries as well. Plaintiff asserts that the jury's conclusion that 100% of Mr. Cleveland's injuries were proximately caused by the lack of a rear seat shoulder harness "means that *but for the lack of a rear seat shoulder harness Mr. Cleveland would not have been injured in the head-on collision, regardless of its cause.*" Brief of Appellant Cleveland at p. 5. While this is true, Plaintiff argues therefrom that the converse is also therefore true, i.e., that "no causal link exists between any negligence causing the initial impact and Mr. Cleveland's catastrophic injuries resulting solely from the 'second collision.'" *Id.* at p. 10. Relying on *Duran v. General Motors Corp.*, 101 N.M. 742, 688 P.2d 779, 787 (Ct.App.1983), *cert. quashed* 101 N.M. 555, 685 P.2d 963 (1984), *citing Huddell v. Levin*, 537 F.2d 726, 738 (3rd Cir.1976), Plaintiff asserts that those responsible for the "initial collision" are not concurrent tortfeasors with those responsible for the "second collision." Plaintiff then implies that the negligence of those who are *not* concurrent tortfeasors should not be compared under New Mexico's pure comparative negligence jurisprudence, in which joint and several liability of concurrent tortfeasors has been eliminated, *see Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct. App.1982), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982). Rather, Plaintiff suggests that those responsible for the initial and second collisions are in fact successive tortfeasors. Plaintiff posits that the negligence of the former need not be compared to the negligence of the latter because "New Mexico has never abolished joint and several liability for successive tortfeasors." Brief of Appellant Cleveland at p. 9.

Defendant in response initially asserts that the district court properly applied New Mexico comparative negligence law in deciding that the initial accident and crashworthiness injuries were inseparable as far as apportionment was concerned. However, Defendant does not explain and it is incomprehensible to this Court how the conclusion that the initial accident and crashworthiness injuries were indivisible in

any way supports the propriety of either the special verdict form, which required division of injuries and apportionment of damages and comparison of negligence separately among those responsible for the "initial collision" and among those responsible for the "second collision," or entry of the judgment which was entered. The remainder of Defendant's argument in response to Plaintiff's appeal is more cogent. Defendant apparently agrees with Plaintiff that a manufacturer whose negligence causes "second collision" or crashworthiness injuries and a person whose negligence causes the "initial collision" are not concurrent tortfeasors but are successive tortfeasors. However, Defendant asserts that Plaintiff's position that the negligence of the initial tortfeasors should not be compared to the negligence of the tortfeasors responsible for the second collision is directly contrary to *Huddell v. Levin*, 537 F.2d 726; to most cases from other jurisdictions addressing comparative apportionment in crashworthiness cases; and to the goal of equitable loss allocation embodied in New Mexico law of comparative negligence adopted in *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981) and extended in *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 and *Marchese v. Warner Communications, Inc.*, 100 N.M. 313, 670 P.2d 113 (Ct.App.1983), *cert. denied*, 100 N.M. 259, 669 P.2d 735 (1983).

Because we conclude that New Mexico law requires that the jury compare the negligence of those responsible for the "initial collision" with the negligence of those responsible for "second collision" or crashworthiness injuries, requiring that we vacate the judgment entered and remand this case for a new trial, we find it unnecessary to determine whether the special verdict findings may be harmonized.

In *Duran v. General Motors Corp.*, 101 N.M. 742, 688 P.2d 779 (1983) the New Mexico Court of Appeals adopted a crashworthiness doctrine [6] which limits crash-

worthiness liability to those circumstances in which a plaintiff can prove that a vehicle's lack of crashworthiness due to a manufacturer's negligence either enhanced injuries which the Plaintiff would have otherwise sustained in the accident if no crashworthiness negligence had occurred, or caused the ultimate injury. 688 P.2d at 781–82. In adopting its crashworthiness doctrine, the New Mexico Court of Appeals appropriated the standard of proof as to proximate cause employed in *Huddell v. Levin*, 537 F.2d 726 (3rd Cir.1976). This standard of proof of crashworthiness causation requires a plaintiff, as part of his prima facie case of crashworthiness liability, to prove 1) that the design caused injuries over and above those which otherwise would have been sustained, absent the defect; and 2) the degree of "enhancement," of injuries by " 'proof of what injuries, *if any*, would have resulted had the alternative, safer design been used.' " *Duran v. General Motors Corp.*, 688 P.2d at 787, *quoting Huddell v. Levin*, 537 F.2d at 737 (emphasis added).[7] A plaintiff does not satisfy the second aspect of his causation burden by leaving the degree of enhancement to the jury's surmise and speculation; rather, " 'the plaintiff must offer some method of establishing the extent of enhanced injuries attributable to the defective design.' " *Id., quoting Huddell v. Levin*, 537 F.2d at 738.

New Mexico's particular version of crashworthiness liability with its attendant burden of proximate cause, as we perceive it, necessarily precludes a cause of action for crashworthiness liability based upon an indivisible injury. In other words, the concept of an "indivisible injury" has no place in New Mexico's crashworthiness doctrine. *Compare with, e.g., Fox v. Ford Motor Co.*, 575 F.2d 774, 787 (10th Cir.1978); *Lee v. Volkswagen of America, Inc.*, 688 P.2d 1283, 1287 (Okla.1984). New Mexico's adoption of the *Huddell* standard of proof

---

**6.** The New Mexico Supreme Court has not to date addressed the issue of crashworthiness liability.

**7.** *Huddell v. Levin* was a crashworthiness case predicated on New Jersey strict liability. There,

the Third Circuit employed strict liability terms and concepts in describing a plaintiff's burden of proof. The New Mexico Court of Appeals in *Duran* adopted crashworthiness liability predicated on negligence, only.

for proximate cause to establish crashworthiness liability requires that a plaintiff meet a burden of apportionment, i.e., of establishing that his crashworthiness injuries are divisible from those which would have been sustained as a result of the accident, absent the alleged crashworthiness defect; his failure to meet this burden is fatal to his crashworthiness claim. *See Huddell v. Levin*, 537 F.2d at 739. *Accord Hebenstreit v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 N.M. 301, 336 P.2d 1057, 1061 (1959) (to establish liability for aggravation or exacerbation of pre-existing injury, the plaintiff has the burden of proving with reasonable certainty the extent of the aggravation and failure of such proof is fatal to claim) (*cited in Duran v. General Motors Corp.*, 101 N.M. 742, 688 P.2d at 787). The district court correctly incorporated the concepts of divisibility and apportionment in the special verdict form, which required that the jury make a finding as to what percentage of Plaintiff's injuries were caused by the lack of a rear seat shoulder harness and permitted the jury to find those whose negligence caused or contributed to the crashworthiness injuries liable only for those enhanced injuries and not for any injuries sustained solely as a result of the "initial collision." [8] This disposes of Defendant's argument that the district court correctly concluded that Plaintiff's injuries were indivisible and that this conclusion somehow supports the court's entry of judgment based upon the percentage of Defendant's negligence in causing the initial collision, i.e. on the forward visibility or the design negligence claim.

If no other issues were raised by Plaintiff's appeal and the facially inconsistent verdicts could be reconciled, we would thus be required to enter judgment or direct the district court to enter judgment for the Plaintiff based upon the jury's determination of the percentage of Defendant Piper's comparative negligence on the crashworthiness design negligence claim, since the jury found that 100% of Plaintiff's injuries and damages were attributable to the airplane's lack of crashworthiness (lack of a rear shoulder harness). However, as both Plaintiff and Defendant apparently recognize, whether this Court may enter such a judgment as the correct judgment to be entered on the special verdict, or may direct the district court to enter such a judgment, depends upon the nature of the relationship under New Mexico law between the original tortfeasors, i.e., those whose negligence caused the "initial collision," and the crashworthiness tortfeasors, i.e., those whose negligence caused the "second collision" or the enhanced "crashworthiness" injuries, and the correct application of New Mexico comparative negligence law to that relationship. To support entry of judgment based on Piper's comparative negligence on the crashworthiness claim in accordance with the jury's answer to question 7B of the special verdict, which did *not* permit the jury to compare the negligence of the original tortfeasors with that of the crashworthiness tortfeasors, and in an attempt to justify the propriety of comparing the negligence only *among* the crashworthiness tortfeasors, Plaintiff argues as follows: 1) This is a "second collision" or "crashworthiness" case, not an

---

**8.** This statement assumes that there was evidence from which a jury could find that Plaintiff probably would have sustained *some* injury or injuries solely as a result of the "initial collision," i.e., as a result of the accident, absent the alleged crashworthiness negligence.

We refer to injuries resulting from or caused by the "initial collision" as a shorthand method of referring to those injuries which a plaintiff would have received in an accident in the absence of crashworthiness negligence, *see Duran v. General Motors Corp.*, 688 P.2d at 786–87. Similarly, we refer to injuries resulting from or caused by the "second collision," i.e. the "crashworthiness injuries," to denote enhanced injuries attributable to crashworthiness negligence,

*see id.* In using this shorthand, we do not mean to in any way suggest that "crashworthiness," "second collision" or "enhanced injury" liability (which terms the New Mexico Court of Appeals employs synonymously, *see id.* at 782) in New Mexico is dependent on a showing of separate, discrete impacts or collisions. Under New Mexico law, a single impact may produce both "initial collision" and "second collision" or crashworthiness injuries. This is true even if the plaintiff suffers but a single injury, provided that the plaintiff can show that absent the crashworthiness negligence, either the injury would have been less severe and the degree of severity attributable to the crashworthiness negligence, or that he would not have been injured at all.

enhanced injury case; 2) The original tortfeasors and crashworthiness tortfeasors are not concurrent tortfeasors; and 3) The original and crashworthiness tortfeasors are successive tortfeasors. Defendant on the other hand asserts that while the relationship between the original and crashworthiness tortfeasors is not that of concurrent tortfeasors for all accident results, their relationship is that of concurrent tortfeasors as to the enhanced injury, for purposes of comparative causation. *See* Combined Answer and Cross Appeal Brief of Appellee Cross–Appellant, Piper Aircraft Corporation, at pp. 20–21. We examine these arguments in turn.

Plaintiff distinguishes between this case and an "enhanced injury" case because the jury found that 100% of Mr. Cleveland's injuries and damages were attributable to the lack of crashworthiness. Plaintiff infers from this finding that the negligence of those causing the "second collision" was the *sole* cause of all of Plaintiff's injuries and damages and that those whose negligence caused the "initial collision" are not responsible for, had no causal role in and are not also legal or proximate causes of any of Plaintiff's injuries and damages. There are numerous problems with this argument. First, it ignores the fact that the jury *also* found that the design negligence was a proximate cause of Plaintiff's injuries and damages, *see* R.Vol. I at Tab 108, Question No. 2, and that the negligence of Plaintiff and Robert Mudd were also proximate causes of Plaintiff's injuries and damages. *See id.* at Question No. 7A. Secondly, under New Mexico law the terms "crashworthiness," "second collision" and "enhanced injury," when used to describe a theory of liability, are synonymous. *See Duran v. General Motors Corp.*, 101 N.M. 742, 688 P.2d at 782. All refer to liability based on either "enhanced *or additional* injuries" caused by a negligent failure to protect against injury in the event of a collision. See *id.* at 787 (emphasis added). Under New Mexico law, an enhanced injury is any injury *"over and above* the damage or injury that probably would have occurred as a result of the impact or collision absent the defect." *Id.* at 786, *quoting Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir.1968), which necessarily includes not only any aggravation or enhancement of an injury which was or would have been sustained in the initial collision, absent the manifestation of any crashworthiness negligence, but *also* any "new" or "different" injury which was not and would not have been sustained in the initial collision absent the manifestation of any crashworthiness negligence. *See id.* at 787 ("crashworthiness liability is based only on enhanced or additional injuries"). Thus, even when a plaintiff's claim is that he would not have received *any* injuries as a result of the "initial collision" absent the existence of crashworthiness negligence, as here, New Mexico courts refer to the plaintiff's claim as one for enhanced injury. Of course, we recognize that Plaintiff's argument is not fully answered by pointing out that New Mexico law envisions that all crashworthiness liability claims are claims for enhanced injuries and that "enhanced injuries" include new and different injuries. But even if the jury's finding that 100% of the Plaintiff's injuries are "attributable" to crashworthiness design negligence represents an implicit finding that Plaintiff would not have received any injuries as a result of the "initial collision," absent the manifestation of crashworthiness negligence, it does not necessarily follow, as Plaintiff suggests, that the negligence of the original tortfeasors is not also a proximate cause of the crashworthiness injuries.[9] In other words, the converse does not necessarily follow. *See Martinez v. First National Bank of Santa Fe*, 107 N.M. 268, 755 P.2d 606, 607 (Ct.App.1987), *writ dismissed*, 107 N.M. 308, 756 P.2d 1203 (1988).

Plaintiff suggests that because the *Duran* court, citing *Huddell,* stated that "the

---

**9.** In this respect, the jury's findings that the negligence of certain alleged original tortfeasors—Piper and Mudd—was a proximate cause of the Plaintiff's injuries and damages, despite its finding that 100% of Plaintiff's injuries and damages were attributable to crashworthiness negligence, was prescient and fully supportable by New Mexico law of proximate cause.

concurrent tortfeasor concept is not applicable" to crashworthiness liability, 688 P.2d at 787, the negligence of the "original tortfeasors" is not considered a proximate cause of crashworthiness injuries and/or the negligence of the original tortfeasors need not be compared with the negligence of the "crashworthiness tortfeasors" [10] under New Mexico law. Because the New Mexico Court of Appeals in *Duran* cited *Huddell* as authority for its statement, we discern its meaning by referring to the *Huddell* court's discussion of concurrent tortfeasors: [11]

> It is well, indeed necessary, to emphasize the fundamental point of departure between our approach and that proffered by the concurrence. We do not perceive the analysis of "second collision" or "enhanced injury" cases to track the legal lore surrounding concurrent tortfeasor actions which, in the concurrence's formulation, "have combined *contemporaneously* to cause the injuries." Concurring opinion, *post,* at 744 (Emphasis added.) "Second collision" cases do not implicate "clearly established double fault" for the *same* occurrence. Clearly, if the theoretical underpinnings for liability in this case are to be given effect, Levin [the original tortfeasor] may be held liable for *all* injuries, but General Motors [the crashworthiness tortfeasor] may only be held liable for "enhanced injuries." Analogies to concurrent actions combining to cause a *single impact* are simply not applicable where, as here, one party is sued on a fault theory for the collision and the other party is sued on the theory of strict liability for the "second collision." A second source of disagreement between us and Judge Rosenn is the latter's assumption that "[a] failure in apportionment must then needs

> excuse both wrongdoers." *Ibid.* at 744. The burden of apportionment applies only to plaintiff's claim against General Motors. Should plaintiff fail to meet her burden on this claim, the brute fact is that the negligent driver would *not* escape liability on the same ground. Traditional negligence concepts determine the case against Levin and the extent of his liability.

> *Huddell v. Levin,* 537 F.2d at 738–39 (bracketed identification added).

We are persuaded by the foregoing discussion in *Huddell* that the New Mexico court's statement that the concurrent tortfeasor concept is not applicable to crashworthiness liability simply means that a crashworthiness tortfeasor is not a concurrent tortfeasor with an original tortfeasor as to injuries which would have been sustained as a result of the initial collision, absent crashworthiness negligence, but that an original tortfeasor, whose negligence may be deemed to have proximately caused *all* of the injuries, *is or at least may be* a concurrent tortfeasor with a crashworthiness tortfeasor as to the enhanced injuries. Any doubts we might otherwise have that this was the New Mexico Court of Appeals' intent or that the relationship of the original and crashworthiness tortfeasors described in *Huddell* would be altered by New Mexico law are resolved by our observation that this is fully consistent with New Mexico law on the relationship between a tortfeasor whose negligence produces an initial injury and another tortfeasor whose negligence aggravates or enhances the original injury and New Mexico law on proximate cause. *See Martinez v. First National Bank of Santa Fe,* 107 N.M. 268, 755 P.2d 606 (Ct.App.1987) (defendant physician should not be liable in malpractice for plaintiff's

---

**10.** We use the term "original tortfeasors" to refer to those persons or entities whose negligence causes or concurs in causing a collision in which a potential plaintiff receives injuries. We employ the term "crashworthiness tortfeasors" to refer to those persons or entities whose negligent failure to protect a potential plaintiff from injuries in a collision causes or concurs in causing a potential plaintiff to sustain injuries he would not otherwise have sustained in the collision, absent such negligence.

**11.** The following statement by the Court in *Huddell* was prompted at least in part by the concurring judge's opinion that death is indivisible and that those whose negligence concurs in causing such injury are concurrent tortfeasors who, rather than a plaintiff, should have the burden of apportionment, if apportionment is possible, or of otherwise limiting their liability by proving their nonculpability. *See Huddell v. Levin,* 537 F.2d at 744–47 (Rosenn, J., concurring).

original injury, but damages should be apportioned among those negligently contributing to the malpractice injury, including an absent original tortfeasor, if their negligence was a proximate cause of the injury, *citing* Comment b, *Restatement (Second) of Torts* § 879 (1979); a negligent non-party original tortfeasor may be liable for the additional harm caused the victim by a physician negligently treating the victim if negligent treatment is the foreseeable result of the original injury); *Vaca v. Whitaker*, 86 N.M. 79, 519 P.2d 315, 318–19 (Ct.App.1974) (where the judgment against the original tortfeasor covers all injuries sustained by the plaintiff, including those attributable to the negligence of a physician in treating the injured person, satisfaction of that judgment bars the plaintiff from recovering the same damages in a subsequent suit against the physician).

▮ The relationship between original and crashworthiness tortfeasors as to all accident results may properly be described as that of successive tortfeasors. *See Martinez v. First National Bank of Santa Fe*, 107 N.M. 268, 755 P.2d at 608. *Accord,* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 52, p. 352 (5th ed. 1984); Comment c on subsection (1), *Restatement (Second) of Torts* § 433A (1979). Their relationship, however, is that of a particular type of successive tortfeasors, that in which the original tortfeasors may be liable for all of the injuries received and thus may be concurrent tortfeasors or jointly and severally liable with the crashworthiness tortfeasors as to the enhanced injuries only. *See id.* But regardless of the terminology employed to describe the relationship between the original tortfeasors and crashworthiness tortfeasors, it is clear that under New Mexico law of proximate cause, both the original tortfeasors and the crashworthiness tortfeasors may be liable for the second-collision or enhanced injuries. *See Martinez v. First National Bank of Santa Fe*, 107 N.M. 268, 755 P.2d at 607–10; *Vaca v. Whitaker*, 86 N.M. 79, 519 P.2d at 318–19. *See generally LeBlanc v. Northern Colfax County Hospital*, 100 N.M. 494, 672 P.2d 667 (Ct.App.1983); N.M.Stat.Ann., U.J.I.–Civ. 3.8 & 3.9 (Repl.Pamp.1980).

The final issue we must address in determining whether judgment may properly be entered on the crashworthiness claim based on the jury's finding of Defendant Piper's percentage of comparative negligence for crashworthiness injuries, assuming again that the special verdict findings are reconcilable, is how New Mexico law of comparative negligence applies to original and crashworthiness tortfeasors with respect to the enhanced injuries for which they may both be liable as concurrent tortfeasors.

New Mexico has adopted a system of "pure" comparative negligence. *See Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981). The purpose of this doctrine is

> to accomplish (1) apportionment of fault between or among negligent parties whose negligence proximately causes any part of a loss or injury; and (2) apportionment of the total damages resulting from such loss or injury in proportion to the fault of each party.

*Id.* at 1240.

Thus, the doctrine contemplates that percentages of comparative negligence of those whose negligence proximately causes a plaintiff's injuries will be determined by the jury and that "apportionment of damages" will flow from that determination. In *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct. App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982), the New Mexico Supreme Court made it clear that joint and several liability for concurrent tortfeasors was not to be retained under New Mexico's pure comparative negligence system, which requires that the fault or negligence of all concurrent tortfeasors be apportioned. 646 P.2d 585. In the New Mexico court's opinion, apportionment of causation among concurrent tortfeasors is accomplished as a necessary consequence of a jury's apportionment of fault or negligence under a pure comparative negligence system. See *id.* The logical extension of *Bartlett* to the case before this Court is that as to that portion of damages for which the original tortfeasors and the crashworthiness tortfeasors are concurrent tortfeasors, i.e. damages attributable to the enhanced injuries, only, the negligence of *all* of the

tortfeasors, and of the Plaintiff, must be compared. This is consistent both with New Mexico law of proximate cause, *see* above, and with the goal of New Mexico comparative negligence law, that of achieving "apportionment of fault between or among negligent parties *whose negligence proximately caused any part of a loss or injury.*" *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d at 1240, *quoted in Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d at 586.

We are satisfied that the New Mexico Supreme Court would hold that common sense in the fair application of its pure comparative negligence system mandates that the negligence of all parties, including original tortfeasors and crashworthiness tortfeasors, which proximately causes enhanced injuries in a crashworthiness or "second collision" case must be compared. *See Scott v. Rizzo,* 96 N.M. 682, 634 P.2d at 1240. *See also Martinez v. First National Bank of Santa Fe,* 107 N.M. 268, 755 P.2d at 607–10; *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579.

## II.

■ Defendant contends that Plaintiff's evidence of Defendant's failure to exercise due care by not fitting the Super Cub with a rear seat shoulder harness did not meet the standard of proof mandated by *Duran v. General Motors Corp.* for crashworthiness liability because Plaintiff's evidence assertedly consisted solely of expert opinion testimony, unsupported by any laws, regulations or industry standards. Defendant asserts that for this reason, the district court erred in denying Defendant's motions for a directed verdict and for judgment notwithstanding the verdict. However, as Plaintiff points out, Defendant did not make this argument in the district court to support either its motion for a directed verdict, *see* R.Vol. IV (Tr.Vol. 3) at pp. 608–11 & R.Supp. Vol. I (Tr.Vol. 5) at p. 835, or its alternative motion for judgment notwithstanding the verdict or for a new trial, *see* R.Vol. I at Tab 114. Failure to move for a directed verdict on this ground precludes Defendant from challenging the district court's denial of its motions for a

directed verdict and for judgment notwithstanding the verdict on such basis now, and further precludes Defendant from challenging the sufficiency of the evidence of crashworthiness negligence on appeal. *See Karns v. Emerson Electric Co.,* 817 F.2d 1452, 1455–56 (10th Cir.1987) (failure to renew motion for directed verdict at the close of all of the evidence bars consideration of a motion for judgment notwithstanding the verdict and appellate review; grounds not raised in a motion for a directed verdict may not be asserted in a motion for judgment notwithstanding the verdict or on appeal). *Accord, Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1459 (9th Cir.1988) (failure to move for a directed verdict at the close of all of the evidence bars a party from questioning the sufficiency of the evidence both before the district court and on appeal except where such plain error is apparent on the face of the record that failure to review would result in manifest injustice); *Myers v. Norfolk Livestock Market, Inc.,* 696 F.2d 555, 558 (8th Cir.1982) (same, but no plain error doctrine recognized); *Rawls v. Daughters of Charity of St. Vincent DePaul, Inc.,* 491 F.2d 141, 147 (5th Cir.), *cert. denied,* 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 307 (1974). Even if this issue had been properly preserved for appeal, Plaintiff's evidence of Federal Aeronautics Association [sic] and National Transportation Safety Board design guidelines, *see* R.Vol. IV (Tr.Vol. 3) at p. 465, satisfies the *Duran* requirement that crashworthiness negligence be established by proof of noncompliance with extrajudicial standards or guidelines. *See Duran v. General Motors Corporation,* 101 N.M. 742, 688 P.2d at 783–84.

## III.

Defendant contends that Plaintiff's evidence of proximate causation on his crashworthiness claim is legally insufficient under *Duran* because Plaintiff's evidence failed to establish 1) that Plaintiff would have received the same injury had the front seat not been removed, i.e., Plaintiff failed to eliminate his product modification as a cause of his injury, and 2) what injuries Plaintiff would have sustained if he had

been wearing a shoulder harness, i.e., in the absence of the alleged crashworthiness negligence.

■ We find no requirement in *Duran* that a crashworthiness plaintiff eliminate product modification as a proximate cause of crashworthiness injuries. *Duran* speaks only to the nature of the evidence necessary to show that crashworthiness negligence was a proximate cause of injuries over and above those that would have occurred as a result of the collision, absent the crashworthiness negligence. Nor do we find any requirement under New Mexico negligence law that a plaintiff present evidence to eliminate product modification or his own negligence as a proximate cause of his injuries. Moreover, in this case, the jury was permitted to consider whether Plaintiff's modification of the aircraft was negligent and whether such negligence was a proximate cause of his crashworthiness injuries and to compare such negligence, if any, to Defendant Piper's crashworthiness negligence, if any, which was a proximate cause of Plaintiff's crashworthiness injuries. *See* R.Vol. I at Tab 104 (Court's Jury Instructions), Nos. 3, 13 & 20 and R.Vol. I at Tab 108 (Verdict).

■ As the district court correctly concluded, *see* R.Vol. I at Tab 124, Plaintiff's evidence amply supports the reasonable inference that Plaintiff would have sustained no injuries in the absence of the alleged crashworthiness design negligence, that is, that if he had been wearing a shoulder harness Plaintiff would not have been injured, and that this is true regardless of whether the front seat or the camera and camera mount were located to the fore of Plaintiff during the accident. Both of Plaintiff's expert witnesses, Dr. Richard Snyder and Dr. Norman Horton, testified that if Plaintiff had been wearing a shoulder harness, he would not have struck the camera. R.Vol. IV (Tr.Vol. 3), at p. 472 & 574. Both experts also testified that had the Plaintiff been restrained by a shoulder harness, he would not have struck the front seat either, had it been there. *Id.* at

p. 508–11 & p. 568. Dr. Snyder testified that the camera was located in essentially the same position or even slightly to the fore of where the back of the front seat would have been had the front seat not been removed, relative to the position of the Plaintiff. *Id.* at 511. This evidence was corroborated by the testimony of Robert Mudd, *see* R.Vol. II (Tr.Vol. I) at p. 63, who participated in installing the camera mount and camera. *Id.* at p. 48. Since the only significant injury that Plaintiff received in the accident was a massive head injury, *see* R.Vol. I, p. 103, it is reasonably inferable from Plaintiff's evidence that Plaintiff would have received no injury had he been wearing a shoulder harness.[12] Thus, there was evidence from which the jury could properly find that Plaintiff would have received no injuries if he had been wearing a shoulder harness.

The trial court did not err in denying Defendant's motions for a directed verdict and for judgment notwithstanding the verdict on the issue of proximate causation of crashworthiness injuries.

## IV.

Defendant contends that the district court should have granted its motion for a directed verdict or its motion for judgment notwithstanding the verdict because Plaintiff's evidence failed to establish any negligent design defect which caused the collision. Defendant maintains that Plaintiff's own evidence established that the limitation on forward visibility from the rear seat was obvious and readily compensated for by following a standard piloting technique of making s-turns prior to take-off, a practice Plaintiff himself employed prior to attaching the glider to the Super Cub. Defendant then implies that it was Plaintiff's negligence, in attaching the glider, which caused any inadequacy in forward visibility and the collision as a matter of law. Defendant's argument is without merit.

12. Defendant also challenges Dr. Snyder's competence to give certain opinion evidence but because this challenge is predicated on the erroneous supposition that Plaintiff was required to prove that he would have received the same injuries had the front seat rather than the camera and its mount been located in front of him, we need not separately address this issue.

■ The jury could have readily concluded that Plaintiff was negligent in attempting to fly the aircraft from the rear seat while towing a glider and that Plaintiff's negligence was a proximate cause of the collision, and apparently did, inasmuch as it found that Plaintiff was 42.5% comparatively negligent on the forward visibility claim. But the negligence of two or more persons may concur or combine in causing injury. Moreover, under New Mexico law, a plaintiff's assumption of risk is not a complete defense but is conduct which is properly the subject of comparative causation. *See* N.M.Stat.Ann., U.J.I.–Civ. 14–12 (Repl.Pamp.1980). *Accord, Proctor. v. Waxler,* 84 N.M. 361, 503 P.2d 644, 646–47 (1972). *Cf. Marchese v. Warner Communications, Inc.,* 100 N.M. 313,670 P.2d 113, 116–18; *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d at 1240 (a plaintiff's misconduct or negligence in voluntarily and unreasonably encountering a known danger is not a complete defense to a products liability claim but is properly the subject of determining the plaintiff's comparative fault). Thus, evidence that Plaintiff's own negligence was a cause of the lack of forward visibility is not dispositive of the propriety of the district court's denial of the directed verdict and JNOV motions on the design negligence causation issue.[13] Rather, in reviewing the propriety of the district court's rulings on these motions, we must determine whether there is evidence from which a jury could properly find in favor of Plaintiff on this issue. *See, e.g., Brown v. McGraw–Edison Co.,* 736 F.2d 609, 612–13 (10th Cir.1984) (motion for judgment notwithstanding the verdict); *Martin v. Unit Rig & Equipment Co.,* 715 F.2d 1434, 1438 (10th Cir.1983) (motion for directed verdict). In making this determination, we must view the evidence most favorably to the Plaintiff and give him the benefit of all reasonable inferences therefrom. *Id.* We may not weigh the evidence, evaluate the credibility of the witnesses or substitute our judgment for that of the jury. *See id.*

We will reverse a district court's denial of a motion for a directed verdict or of a motion for judgment notwithstanding the verdict only when the evidence and all of the inferences to be drawn therefrom point but one way and so conclusively favor of the moving party that reasonable persons could not find in favor of the non-moving party. *See Farmers Insurance Co. v. Hubbard,* 869 F.2d 565, 570 (10th Cir.1989) (motion for judgment notwithstanding the verdict); *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988) (same); *Federal Deposit Insurance Corp. v. Palermo,* 815 F.2d 1329, 1335 (10th Cir.1987) (motions for directed verdict and for judgment notwithstanding the verdict); *E.E.O.C. v. University of Oklahoma,* 774 F.2d 999, 1001–02 (10th Cir.1985), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986) (motion for judgment notwithstanding the verdict; *Hurd v. American Hoist and Derrick Co.,* 734 F.2d 495, 498–99 (10th Cir.1984) (both motions)).

■ Viewing the evidence most favorably to the Plaintiff and giving him the benefit of all reasonable inferences, we cannot say that the evidence points but one way, and that a reasonable jury could not properly find that considering all of the circumstances the risk of injury was foreseeable and would have been avoided by a reasonably prudent manufacturer, that Plaintiff's manner of use of the aircraft was foreseeable, and that Defendant's failure to use ordinary care to design the aircraft to avoid the risk of injury was a proximate cause of the Plaintiff's injuries.[14] *See Steinberg v. Coda Roberson Construction Co.,* 79 N.M. 123, 440 P.2d 798, 799 (1968); R.Vol. I at Tab 104 (Court's Jury Instructions), Nos. 4–9 & 11–13. The record contains substantial evidence that the design of the Super Cub significantly impairs forward visibility from the rear seat during take-off and that aircraft collisions with objects on the ground occur with regularity. The jury could have reasonably concluded that an ordinarily prudent manu-

---

**13.** Plaintiff contends that this issue is moot because the jury found that 100% of Plaintiff's injuries were attributable to the plane's lack of crashworthiness. Because we have concluded that the judgment herein must be vacated and

the case remanded for a new trial, this issue is not moot.

**14.** See our discussion of proximate cause *supra* at section I.

facturer could reasonably expect that a pilot might fail or be unable to make s-turns to compensate for the lack of forward visibility despite awareness of the danger. *See Proctor v. Waxler,* 84 N.M. 361, 503 P.2d at 646–47; R.Vol. I at Tab 104 (Court's Jury Instructions), No. 12 (N.M. Stat.Ann., U.J.I.–Civ. 14.12 (Repl.Pamp. 1980)) (duty to use ordinary care to prevent an unreasonably dangerous condition exists even if such condition would be obvious to the user, if the party creating such risk could reasonably anticipate that the user would fail to protect himself). The district court did not err in denying the motions for a directed verdict and for judgment notwithstanding the verdict predicated on a failure of proof that design negligence was a proximate cause of the collision.

## V.

■ Defendant also contends that the district court erred in not granting its motion for a directed verdict or for judgment notwithstanding the verdict on the ground that the particular accident scenario and Plaintiff's misuse of the aircraft were unforeseeable as a matter of law and therefore, that Defendant had no duty to guard against such risks. Defendant argues that to require an airplane manufacturer to avoid the risks of what Defendant describes as a "dangerous combination of misconduct" by the Plaintiff would make it an insurer against pilots' intentional risk-taking and misuse, contrary to New Mexico law, citing *Daniell v. Ford Motor Co.,* 581 F.Supp. 728, 730 (D.N.M.1984) and *Van de Valde v. Volvo of America Corp.,* 106 N.M. 457, 744 P.2d 930 (Ct.App.1987). Assuming that Defendant had a duty to guard against such risks, however, Defendant argues that its negligence was not established because Plaintiff failed to produce any evidence of what a reasonably prudent manufacturer could have done to have protected Plaintiff from the dangers created by Plaintiff's modification and operation of the aircraft. These arguments are without merit.

New Mexico law does not require that the "precise hazard or exact consequences which were encountered" be foreseeable.

*Ortega v. Texas–New Mexico Railway Co.,* 70 N.M. 58, 62, 370 P.2d 201, 203 (1962); *Harless v. Ewing,* 80 N.M. 149, 151, 452 P.2d 483, 485 (Ct.App.1969). There was ample evidence at trial from which a jury could properly find that the risk of collision with an object on the runway and the Plaintiff's conduct were *"objectively reasonable to expect," Van de Valde v. Volvo of America Corp.,* 106 N.M. 457, 744 P.2d 930, 932 (Ct.App.1987), *quoting Mata v. Clark Equipment Co.,* 58 Ill.App.3d 418, 15 Ill.Dec. 980, 983, 374 N.E.2d 763, 766 (1978) and thus foreseeable. This evidence included evidence that every year many aircraft collisions with objects on the ground occur, *see* R. Vol. IV (Tr. Vol. 3) at pp. 550 & 569; evidence of Piper's Super Cub design, which permitted the plane to be flown from the rear seat and provided a large trapezoidal window for photography, *see id.* at pp. 534 & 551; Piper's owner's handbook's advice that rear seat operation of the craft is feasible, *id.* at p. 539, that the front seat could be removed entirely, *id.,* and that for photography from the aircraft, its right door and window could be opened during flight, *id.* at 551; Piper's flight manual's advice on the maximum allowable weight in the baggage compartment during rear seat flight, *id.* at pp. 542–43; the lack of any information in Piper's handbook or flight manual concerning s-turns or forward visibility during take-off for a rear-seat pilot, *id.* at pp. 549–50; and evidence of the Civil Aeronautics Administration's advice to Piper to placard its aircraft "Solo from front seat only." *Id.* at pp. 544–46.

■ The district court was correct in concluding that a plaintiff is not required to offer proof of benefit from an alternate design in order to establish design negligence. *See* R. Vol. I at Tab 114 (Memorandum Opinion and Order) at p. 2. All that was required was that the Plaintiff present evidence from which a jury could conclude that the risk of injury would have been avoided by a reasonably prudent person in the position of the manufacturer. *See* N.M.Stat.Ann., U.J.I.–CIV. 14–4 (Repl. Pamp.1980); *Steinberg v. Coda Roberson Construction Co.,* 79 N.M. 123, 124, 440 P.2d 798 (1968). The jury could reasonably conclude from evidence concerning the lack

of forward visibility from the rear seat of the tail dragger craft and the risk of accidents due to runway obstructions that a reasonably prudent manufacturer would have designed the craft in a manner to avoid runway accidents resulting from such visibility limitation. Plaintiff's evidence of at least two alternate designs by which Defendant could have avoided the risk, *see* R. Vol. IV (Tr. Vol. 3) at pp. 555–56 & 584–85, while not critical, was simply additional evidence from which the jury could conclude that a reasonably prudent manufacturer could have and would have avoided the risks in question. The district court properly rejected Defendant's directed verdict and JNOV motions predicated upon the asserted unforeseeability of the accident and the Plaintiff's conduct and on the asserted lack of proof of an alternate design.

### VI.

Defendant recasts previous arguments concerning whether design negligence was a proximate cause of the accident and whether Plaintiff's modification of and use of the aircraft were unforeseeable to finally urge that both the Plaintiff's conduct and the deliberate obstruction of the runway by Mr. Wood, or a combination thereof, were independent intervening causes as a matter of law. What we have already said concerning the issue of foreseeability disposes of this argument. There was evidence from which a jury could reasonably conclude that both Plaintiff's conduct and an obstruction on the runway were foreseeable. If an intervening act or cause is one which is reasonably foreseeable, the intervening act does not break the chain of causation and the original tortfeasor's negligence remains a proximate cause of the injury which finally results. *Thompson v. Anderman,* 59 N.M. 400, 285 P.2d 507, 514–15 (1955); N.M.Stat.Ann., U.J.I.–Civ. 3.8 & 3.9 (Repl.Pamp.1980). *See also Achin v. Begg Tire Center,* 694 F.2d 226, 228–29 (10th Cir.1982) (applying New Mexico law) (independent intervening cause is one which could not have reasonably been foreseen or one which the defendant had no reason to anticipate under the particular circumstances).

### VII.

In a final contention in its cross appeal, Defendant asserts that the district court erred in denying its motion for a new trial because the district court erred in rejecting a standard New Mexico special verdict form proposed by Defendant in favor of one that was inconsistent with the court's ruling on the indivisibility of Plaintiff's injury and improperly did not permit the jury to compare together the negligence of all persons which caused the "initial collision" and that of all persons which caused the enhanced injuries, only. In addition, Defendant contends that questions in the special verdict form asking the jury to compare the negligence of non-parties and of Plaintiff to that of Defendant on the "design negligence claim" and to compare Plaintiff's and Defendant's negligence under the "crashworthiness design negligence claim" were confusing.

▮ Defendant did not move for a new trial on this basis. Indeed, as the district court properly found, Defendant cited no grounds for its new trial motion. R. Vol. I Tab 124 (Memorandum Opinion and Order) at p. 5. Hence, no issue is presented for our review by virtue of the district court's denial of the new trial motion.

In its reply brief Defendant argues that the asserted errors in the special verdict form to which Defendant made objection at trial may nevertheless be raised on appeal, even if they were not the subject of a new trial motion, citing *Hansen v. Vidal,* 237 F.2d 453 (10th Cir.1957) and 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2540 (1971). With respect to aspects of the special verdict form to which no objections were made by Defendant at trial, Defendant suggests that we may review the special verdict form under the limited exception which permits us to review instructions to which proper objection was not made if they are "patently plainly erroneous and prejudicial," *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1516 (10th Cir.1984), *aff'd* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985), *quoting Brown v. McGraw–Edison Co.,* 736 F.2d at 614 n. 6 (*quoting Moe v. Avions Marcel Dassault–Breguet Avia-*

*tion,* 727 F.2d 917, 924 (10th Cir.) *cert. denied,* 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984)), or for "plain error if it was a 'generating factor which culminated in a verdict not warranted under the law.'" *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d at 1516 n. 6, *quoting Herndon v. Seven Bar Flying Service, Inc.,* 716 F.2d 1322, 1330 (10th Cir.1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984).

We agree with Defendant that its objection to the form of the special verdict employed by the district court preserved for our review any errors therein which were the bases for Defendant's objection, even though such asserted errors were not made the bases of a motion for a new trial or for judgment notwithstanding the verdict. *See Hansen v. Vidal,* 237 F.2d 453 (10th Cir. 1956). See *generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2540 at p. 611.

Defendant objected to question 7B in the special verdict form on the ground that it did not allow for the comparison of "the fault of any non-party and party" on the crashworthiness claim. R. Supp. Vol. I (Tr. Vol. 5) at p. 835. By way of further explanation, Defendant directed the Court to the special verdict form which it prepared and offered (R. Vol. I at Tab 105). *Id.* Defendant's proposed special verdict form would have permitted the jury to compare the negligence of the following persons which the jury found was a proximate cause of the Plaintiff's damages: Defendant, Plaintiff, John "Jack" Wood, Robert Mudd, Etchison Greg Lill, Arnold Lerner, and Stephen Marks. R. Vol. I at Tab 105, No. 4. Plaintiff contends that Defendant's objection to question 7B did not specify what non-parties should have been included. Plaintiff further seems to suggest that Defendant's reference to its own proposed verdict form either did not provide the necessary identification of non-parties or instead actually raised an objection to the Court's separation of the "design negligence claim," for inadequate forward visibility and comparisons of negligence on that claim, from the "crashworthiness design negligence claim" for lack of a shoulder harness and comparisons of negligence on that claim, since the special verdict form proposed by Defendant did not separate these claims. We disagree.

As should be obvious from what we have said in connection with Plaintiff's appeal, *see* section I, *supra,* the trial court should have permitted the jury to determine whether the negligence of original tortfeasors was a proximate cause of Plaintiff's enhanced injuries, and to compare the negligence of any original tortfeasors found to be a proximate cause of the enhanced injuries to the negligence of any crashworthiness tortfeasors and of the Plaintiff which was found to have proximately caused Plaintiff's enhanced injuries. The special verdict form was erroneous and contrary to New Mexico law because it did not permit the jury to do so. As we have already indicated, our remand of this case to the district court for a new trial is necessary on this basis.

Defendant argues on appeal that the district court erroneously rejected Defendant's proffered special verdict form, based upon New Mexico's Uniform Standard Jury Instructions—Civil 22.20, for one which assertedly improperly separated the forward visibility issue from the restraint system issue and which was misleading because it asked the jury to make comparisons of parties' and non-parties' negligence on Plaintiff's "design negligence claim (inadequate forward vision)" and on Plaintiff's "crashworthiness design claim (lack of shoulder harness in rear seat)." Defendant did not object to the special verdict form on these grounds.

■ Ordinarily, we will not consider on appeal an asserted error in the form of a Rule 49(a) special verdict unless an objection to the special verdict form on that ground was made at trial. *See Golub v. J.W. Gant & Associates,* 863 F.2d 1516, 1521 (11th Cir.1989) (interrogatories); *Frensley v. National Fire Insurance Company of Hartford,* 856 F.2d 1199, 1203 (8th Cir.1988) (interrogatories); *J.C. Motor Lines, Inc. v. Trailways Bus System, Inc.,* 689 F.2d 599, 603 (5th Cir.1982) (interrogatories); *Charles Stores, Inc. v. Aetna Insurance Co.,* 490 F.2d 64, 67–68 (5th Cir. 1974) (interrogatories or special verdict); *Clegg v. Hardware Mutual Casualty Co.,*

264 F.2d 152, 158 (5th Cir.1959) (special verdict or interrogatories); *Filipek v. Moore–McCormack Lines, Inc.*, 258 F.2d 734, 736 (2nd Cir.1958), *cert. denied*, 359 U.S. 927, 79 S.Ct. 605, 3 L.Ed.2d 629 (1959) (interrogatories); *Huse v. Consolidated Freightways, Inc.*, 227 F.2d 425, 430 (7th Cir.1955) (special verdict). Assuming without deciding that we could review the form of the special verdict employed for plain or "fundamental error," *see Golub v. J.W. Gant & Associates*, 863 F.2d at 1521 n. 6; *Dunn v. Ove Skou Rederi A/S*, 45 F.R.D. 18 (E.D.Pa.1968), just as we may review "patently plainly and prejudicial" instructions to which no objection is made, *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d at 1516, our determination that the judgment herein must be vacated and the case remanded for a new trial renders such review unnecessary and any error and prejudice suffered by Defendant moot.

Because this case must be retried, however, we offer the following guidance to the district court. If again the evidence is uncontroverted that Plaintiff would have suffered *no* injuries as a result of the collision, absent the lack of a shoulder harness, then no issue is presented for the jury to determine what injuries and damages were proximately caused by the negligence of the original tortfeasors, *absent the negligence of those which proximately caused the lack of a rear seat shoulder harness*, and the special verdict form should not include questions directed to this issue. Rather, the special verdict form should permit the jury to determine which of the parties and non-parties (whether "original tortfeasors" or "crashworthiness tortfeasors") were negligent; whether the negligence of each of such parties and non-parties was a proximate cause of Plaintiff's injury and damages; the amount of damages sustained by the Plaintiff; and to compare the negligence of each party and non-party (whether "original tortfeasors" or "crashworthiness tortfeasors") found to be the proximate cause of the Plaintiff's injuries and damages. If, on the other hand, there is evidence from which a jury could properly find that Plaintiff would have sustained some injury or the same injury in the collision, absent any crashworthiness negligence or negligence which caused the lack of a rear seat shoulder harness (i.e., that Plaintiff would have sustained some or the same injury if he had been wearing a shoulder harness), the district court should avoid possible jury confusion which may be created by using the terms "design negligence claim" and "crashworthiness design negligence," and asking the jury to compare various persons' negligence on claims so described. Any special verdict or interrogatories should focus instead on the negligence of any parties or non-parties which proximately caused injuries which the jury finds Plaintiff would have sustained if Plaintiff had been wearing a shoulder harness and a comparison of such negligence; and on the negligence of any parties or non-parties which proximately caused injuries to Plaintiff over and above those which Plaintiff would have sustained as a result of the collision, if he had been wearing a shoulder harness, and a comparison of such negligence.

For the foregoing reasons the judgment of the United States District Court for the District of New Mexico is VACATED and the case is REMANDED to the district court for a new trial.